Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391
*Attorneys for Plaintiff*
*Mattel, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTEL, INC., | CIVIL ACTION No. ___ |
| *Plaintiff* | |
| v. | **COMPLAINT** |
| 27GARDEN, ABC TOYS DROPSHIPPING STORE, ALISO STORE, BESTHOME888, BLUE_SPORTS, BRHOME STORE, CHILDHOOD WORLD TOY STORE, CUP0830, DORIS HOME, FUNNYCHOOD STORE, GOODHG, HOME OF STARRY NIGHT STORE, HOMEBETTER2022, HOMEGARDEN1, JOY-TOYS DROPSHIPPING STORE, LIANGJINGJING_HOME, LIFE MALL, LILIAN_WHOLESALE, LITTLESTOOL SWEETHOME STORE, LOVELY MOMENT STORE, LOVESTORE0830, MAINLANDGOODS STORE, MATTEL TOYS STORE, MATTELS TOY WORLD STORE, P97I, POPULAR_TOY, RICHFLYS.STORE a/k/a PENNYUS.SHOP, SHENZHEN JIEJIE GAO INFORMATION TECHNOLOGY CO., LTD., SHOP1102219102 STORE, SHOP1102352055 STORE, SHOPPINGMALL777, SIMPLE MIND STORE, SPECIAL_SALE, SUBLIMATION_STORE a/k/a ESW_HOME2, SUPERMARKET_TOY, | **Jury Trial Requested**<br><br>**FILED UNDER SEAL** |

TAIYUANZHAOLEIXINXIJISHUYOUXIANGON
GSI., TAKARA TOMY RZ TOYS STORE, THE
GIRL NEXT DOOR TRADING CO., LTD, THE SEA
FOR STORE, TOMY TOYS STORE, TOP SHOP,
TOY KINGDOM STORE, US_PENNSYLVANIA,
VINCENT BESTCHOICE STORE and XREA

*Defendants*

# GLOSSARY

| Term | Definition |
|---|---|
| **Plaintiff or Mattel** | Mattel, Inc. |
| **Defendants** | 27garden, ABC Toys Dropshipping Store, Aliso Store, besthome888, blue_sports, brhome Store, Childhood world toy Store, cup0830, Doris Home, FunnyCHood Store, goodHG, Home of Starry Night Store, Homebetter2022, homegarden1, Joy-Toys Dropshipping Store, liangjingjing_home, Life Mall, lilian_wholesale, LittleStool Sweethome Store, Lovely Moment Store, lovestore0830, MainlandGoods Store, Mattel toys Store, Mattels Toy World Store, p97i, popular_toy, richflys.store a/k/a pennyus.shop, Shenzhen Jiejie Gao Information Technology Co., Ltd., Shop1102219102 Store, Shop1102352055 Store, shoppingmall777, Simple Mind Store, special_sale, sublimation_store a/k/a Esw_home2, supermarket_toy, taiyuanzhaoleixinxijishuyouxiangongsi., TAKARA TOMY RZ Toys Store, The Girl Next Door Trading Co., Ltd, The sea for Store, Tomy Toys Store, TOP SHOP, TOY KINGDOM Store, us_pennsylvania, Vincent BestChoice Store and xrea |
| **AliExpress** | Aliexpress.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **Amazon** | Amazon.com, a Seattle, Washington-based, online marketplace and e-commerce platform owned by Amazon.com, Inc., a Delaware corporation, that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their retail products, which, upon information and belief, primarily originate from China, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York |
| **DHgate** | Dunhuang Group d/b/a DHgate.com, an online marketplace and e-commerce platform which allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their wholesale and retail products originating from China directly to consumers worldwide and specifically to consumers residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, NY 10016 |
| **Complaint** | Plaintiff's instant Complaint |

| | |
|---|---|
| **Application** | Plaintiff's *Ex Parte* Application for: 1) a temporary restraining order; 2) an order restraining Defendants' Websites, Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery |
| **Moore Dec.** | Declaration of Michael Moore in Support of Plaintiff's Application |
| **Nastasi Dec.** | Declaration of Gabriela N. Nastasi in Support of Plaintiff's Application |
| **Mattel Products** | Plaintiff's children's toys, games, playthings, and other products, and/or its iconic sub-brands, including, but not limited to: Barbie, UNO, LOL, KidKraft, Thomas & Friends, Hot Wheels, Power Wheels, American Girl and Fisher-Price |
| **Barbie** | An iconic and world-renowned fashion doll |
| **Barbie Products** | A vast range of commercial products including dolls, playhouses, toy cars, books, movies, games, puzzles and clothing sold under the Barbie brand |
| **Mattel Marks** | U.S. Trademark Registration Nos.: 3,165,874 for "MATTEL" for "retail store services for a full line of toys and children's products" in Class 35; and 898,209 for [MATTEL logo] for "toys" in Class 28. |
| **Barbie Marks** | U.S. Trademark Registration Nos.: 689,055 for "BARBIE" for a variety of goods in Class 28; 2,678,386 for "BARBIE" for a variety of goods in Classes 3, 6, 8, 9, 11, 12, 14, 16, 18, 20, 21, 24, 25, 26, 27, 28 and 30; 2,087,842 for "[Barbie logo]" for a variety of goods in Class 28; 2,639,971 for "[Barbie logo]" for a variety of goods in Class 25 and 28 |
| **Plaintiff's Website** | Barbie's fully interactive website, located at http://www.barbie.mattel.com and Mattel's fully interactive website, located at http://www.mattel.com |
| **Counterfeit Products** | Defendants' products advertised, offered for sale and/or sold by Defendants via Defendants' Websites and Defendants' Merchant Storefronts (as defined *infra*), which use the Barbie Marks and/or Mattel Marks and/or products in packaging and/or containing labels bearing the Barbie Marks and/or Mattel Marks and/or bearing or used in connection with marks that are confusingly similar to the Barbie Marks and/or Mattel Marks and/or products that are identical or confusingly |

| | |
|---|---|
| | similar to the Barbie Products |
| **Defendants' Websites** | Any and all fully interactive websites held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, that use the Barbie Marks and/or Mattel Marks, that they operate to communicate with consumers regarding their Counterfeit Products and/or through which consumers purchase Counterfeit Products for delivery in the U.S. |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as AliExpress, DHgate as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any of Defendants' Websites, Defendants' User Accounts or Defendants' Merchant Storefronts (whether said accounts are located in the U.S. or abroad) |
| **Financial Institutions** | PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), the Alibaba Group d/b/a Alibaba.com payment services (e.g., Alipay.com Co., Ltd., Ant Financial Services Group), Amazon.com, Inc., Amazon Payments, Inc. ("Amazon Pay"), DHgate (*e.g.*, DHpay.com) and PingPong Global Solutions, Inc. ("PingPong") |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly by AliExpress, Amazon, DHgate as well as any and all as yet undiscovered online marketplace platforms, Internet Service Providers ("ISP"), back-end service providers, web designers, merchant account providers, website hosts such as Cloudflare, Inc., ShopBase and Dynadot, domain name registrars, domain name registries, shipping, fulfillment and warehousing |

|  | service providers and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |
|---|---|

Plaintiff, a corporation organized and existing under the laws of the State of Delaware, by and through its undersigned counsel, alleges as follows:[1]

## NATURE OF THE ACTION

1.      This action involves claims for counterfeiting of Plaintiff's federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c); trademark infringement of Plaintiff's federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq.*; and false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. § 1125(a)); (the "Action"), arising from Defendants' willful infringement of the Barbie Marks and Mattel Marks, including, without limitation, through Defendants' prominent use of Plaintiff's Barbie Marks and/or Mattel Marks on Defendants' Websites and Defendants' Merchant Storefronts and/or in connection with the advertisement, marketing, promotion, offering for sale and/or sale of their Counterfeit Products.

## JURISDICTION AND VENUE

2.      This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*; pursuant to 28 U.S.C. § 1338(b) as an action arising out of claims for false designation of origin and unfair competition; and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.

3.      Personal jurisdiction exists over Defendants in New York pursuant to N.Y.C.P.L.R. § 302(a)(1) and/or N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Federal Rule of Civil Procedure 4(k),

---

[1] Where a defined term is referenced, but not defined herein, it should be understood as it is defined in the Glossary.

1

because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York; contract to supply goods (including Counterfeit Products) within New York; derive substantial revenue from their business transactions in New York; otherwise avails themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process; and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in New York such that Defendants should reasonably expect such actions to have consequences in New York, for example:

    a.   Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including New York, through Defendants' Websites and Defendants' Merchant Storefronts through which consumers in the U.S., including New York, can place orders for, receive invoices for, and purchase Counterfeit Products for delivery in the U.S., including New York, as a means of establishing regular business with the U.S., including New York.

    b.   Upon information and belief, Defendants are sophisticated sellers, operating commercial businesses through Defendants' Websites and Defendants' Merchant Storefronts, offering for sale and/or selling Counterfeit Products to consumers worldwide, including to consumers in the U.S., and specifically in New York.

    c.   Upon information and belief, Defendants accept payment in U.S. Dollars and offers shipping to the U.S., including to New York.

    d.   Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Counterfeit Products.

    e.   Upon information and belief, Defendants are aware of Plaintiff, Plaintiff's Barbie Marks, Mattel Marks and Barbie Products and is aware that their infringing actions, alleged herein,

are likely to cause injury to Plaintiff in the U.S., and in New York.

4.        Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact, and/or solicit business in this judicial district, are subject to personal jurisdiction in this judicial district, a substantial part of the events or omissions giving rise to the asserted counts occurred in this judicial district, and/or harm to Plaintiff has occurred in this district.

## THE PARTIES

5.        Plaintiff is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 333 Continental Boulevard, TWR 15-1, El Segundo, CA 90245.

6.        Upon information and belief, Defendants are believed to be located in China, however, Defendants' precise addresses are presently unknown.

7.        Upon information and belief, Defendants have engaged in the illegal conduct alleged herein, and have enriched themselves, while Plaintiff has suffered enormous financial injury.

## GENERAL ALLEGATIONS
### Plaintiff and Its Well-Known Barbie Products and Mattel Products

8.        Plaintiff, through its family of companies, is a leading designer, developer, marketer, manufacturer and distributor of well-known children's toys and games ("Mattel Products") under its iconic brands, including, Barbie, Hot Wheels, Fisher-Price, American Girl, UNO and Thomas & Friends. ("Mattel Brands").

9.        Plaintiff sells its Mattel Products worldwide through major retailers, quality toy stores and online marketplaces, including, but not limited to: Wal-Mart, Target Stores, Walgreens, Amazon and many others.

10.       One of Plaintiff's most popular and successful brands is Barbie, an iconic and world renowned fashion doll.

11.     Barbie was created in the late 1950's by Ruth Handler after recognizing that her daughter Barbara had limited choices of toys to play with, unlike her son Ken.  For example, Ken had toys with which he could imagine himself as a firefighter, an astronaut, a cowboy and a doctor, among other things.  Girls, on the other hand, were mostly playing with bits of cardboard in the form of paper dolls used to express fashion play, or baby dolls with which they could imagine themselves as a mother or caregiver.   There was no such thing as a three-dimensional fashion doll.  Ruth came to realize that there was a market for such a doll with which girls could play with fashion and dream of growing up.

12.     Barbie was first introduced at the American International Toy Fair in New York on March 9, 1959, a date which has since become recognized by Mattel as being Barbie's birthday.[2]

13.     However, at the Toy Fair that year, Barbie was not a hit.  The toy buyers, who at the time were mostly men, generally did not know what to make of a fashion doll in the form of an adult woman for children.  Still, Ruth understood that when the doll got into girls' hands, they would see the doll as a platform for imaginative play.  Ultimately, when girls saw the first commercial for Barbie, orders for the doll went through the roof, to the point where Mattel could not manufacture enough dolls to keep up with the demand.

14.     The Barbie doll soon became famous around the world, dramatically impacting the way that children interacted with dolls and the Barbie brand has since expanded to a vast range of commercial products, including, but not limited to, playhouses, toy cars, books, movies, games, puzzles and clothing.

15.     During the first year of production, approximately 300,000 original Barbie dolls were sold.  To date, more than one billion Barbie brand dolls alone have been sold across 150 different countries, as well as additional sales of non-toy Barbie Products in over 45 categories.  Total annual

_____

[2] Contance Gibb, *8 fun facts about Barbara Millicent Roberts on Barbie Day*, New York Daily News (Mar. 9, 2017), https://www.nydailynews.com/life-style/march-9-barbie-day-8-facts-barbara-millicent-roberts-article-1.2992330.

sales under the Barbie brand are more than a billion dollars, with much of that revenue stemming from sales of Barbie Products other than toys.

16.     The impact of the Barbie brand has reached heights and received honors rarely seen in the toy world.  For example, Barbie has appeared in films, including the *Toy Story* franchise,[3] has had a section of Times Square briefly renamed "Barbie Boulevard" in 1974, has been depicted in a painting by the artist Andy Warhol,[4] has landed the cover of *Time Magazine*[5] and is part of the Smithsonian Institution's collection in the National Museum of American History.[6]

17.     Most recently and notably, Barbie was named 2020 Top Global Toy Property of the Year by NPD Group.[7]

18.     Earlier this year, Mattel released a Queen Elizabeth II Barbie doll ("Queen Barbie") as part of its Tribute Collection.  Mattel only produced 20,000 units of the Queen Barbie, which sold out immediately.   Mattel did not release additional Queen Barbie dolls following the initial run.

19.     After Queen Elizabeth's unfortunate passing in September of this year, Defendants took advantage of Queen Elizabeth's popularity and notoriety and heavily marketed and sold the Counterfeit Products through various channels, including Defendants' Merchant Storefronts and Defendants' Websites.  Defendants further jointly solicit consumers through targeted advertising on Facebook, Instagram and other social media websites and platforms, for example, Epstein Drangel was targeted with the below advertisement on Instagram, which was not authorized by Mattel:

---

[3] Toy Story 2 (Walt Disney Pictures 1999); Toy Story 3 (Walt Disney Pictures 2010).
[4] Hannah Moore, *Why Warhol painted Barbie*, BBC (Oct. 1, 2015), https://www.bbc.com/news/magazine-34407991.
[5] *INSIDE THE BIGGEST CHANGE IN BARBIE'S 57-YEAR HISTORY- AND WHAT IT SAYS ABOUT AMERICAN BEAUTY DEALS*, TIME, http://time.com/barbie-new-body-cover-story/.
[6] Smithsonian Institution, https://www.si.edu/object/nmah_1155897 (last visited Dec. 10, 2018)
[7] *See* BUSINESS WIRE, *Barbie Named 2020 Top Global Toy Property of the Year, Per NPD* (Jan. 27, 2021), https://www.businesswire.com/news/home/20210127005559/en/.



**Plaintiff's Intellectual Property Rights**

20.     While Plaintiff has gained significant common law trademark and other rights in the Barbie brand through use, advertising, and promotion, Mattel has also protected these valuable rights by filing for and obtaining federal trademark registrations.

21.     Plaintiff, is the owner of a number of US Trademark Registrations for BARBIE or BARBIE formative marks, including but not limited to U.S. Trademark Reg. Nos.: 689,055 for "BARBIE" for a variety of goods in Class 28; 2,678,386 for "BARBIE" for a variety of goods in Classes

3, 6, 8, 9, 11, 12, 14, 16, 18, 20, 21, 24, 25, 26, 27, 28 and 30; 2,087,842 for "*Barbie*" for a variety

of goods in Class 28; 2,639,971 for "*Barbie*" for a variety of goods in Class 25 and 28. True and

correct copies of the registration certificates for the Barbie Marks are attached hereto as **Exhibit B** and

incorporated herein by reference.

22.     Plaintiff is also the owner of U.S. Trademark Registration Nos.: 3,165,874 for

"MATTEL" for "retail store services for a full line of toys and children's products" in Class 35;

4,106,374 for "MATTEL" for "computerized online ordering services in the field of toys, games and

playthings, electronic commerce services, namely, providing information about products via

telecommunication networks for advertising and sales purposes." in Class 35. True and correct copies

of the registration certificates for the Mattel Marks are attached hereto as **Exhibit B** and incorporated

herein by reference.

23.     The Barbie Marks are currently in use in commerce in connection with Barbie Products.

The Barbie Marks were first used in commerce on or before the date of first use as reflected in the

registrations attached hereto as **Exhibit B**.

24.     The Barbie Marks are valid, subsisting and incontestable.

25.     The Mattel Marks are currently in use in commerce in connection with all Mattel Brands.

The Mattel Marks were first used in commerce on or before the dates of first use as reflected in the

registration certificates attached hereto as **Exhibit B**.

26.     The Mattel Marks are valid, subsisting and many are incontestable.

27.     The success of the Barbie brand is due in part to Mattel's marketing and promotional

efforts.  These efforts include advertising and promotion through television, Mattel's website, retailer websites, print and internet-based advertising and placement of the Barbie Products at dozens of authorized major retail outlets, both domestically and abroad, including New York.

28.   The success of the Barbie brand is also due to its use of highest quality designs, materials and processes in making the Barbie Products.

29.   Additionally, Mattel owes a substantial amount of the success of the Barbie Products to its consumers and word-of-mouth buzz that its consumers have generated, including through events featuring Barbie Products, such as events at Mudec's Museo delle Culture in Milan, Italy,[8] as well as meetups for fans.

30.   The Barbie brand's popularity extends even into the internet and social media, as, for example, the Barbie brand Instagram account, @barbiestyle, currently has over 2.2 million followers.[9] Additionally, the Barbie channel on YouTube has over 3.8 billion views.[10]

31.   While the largest market for Barbie dolls is girls ages 3 to 11, there is also a large market of adult collectors.  For example, the Barbie National Convention in the U.S. began in New York City in 1980 and Mattel estimates that there are eight million active collectors of Barbie dolls, primarily adults.

32.   Mattel's efforts, the quality of Mattel's Barbie Products, and the word-of-mouth buzz generated by its consumers have made the Barbie Marks, Mattel Marks and Barbie Products prominently placed in the minds of the public.  The Barbie brand has achieved near universal recognition among the general consuming public in the U.S., and members of the public and retailers

---

[8] Mudec Museo delle Culture, *Calling her a doll would be belittling. Barbie is a global icon, who in her 56 years of life manages to knock down every linguistic, cultural, social, and architectural barrier.* (last visited Jan. 27, 2021), http://www.mudec.it/eng/barbie/.
[9] @barbiestyle, Instagram, https://www.instagram.com/barbiestyle/ (last visited Nov. 17, 2022).
[10] Barbie Channel, YouTube, https://www.youtube.com/user/barbie (last visited Nov. 17, 2022).

have become familiar with Mattel's Barbie Marks, Mattel Marks and Barbie Products, and have come to associate them exclusively with Mattel.

33.     As recently as 2010, research conducted by Mattel among more than 1,800 participants showed that awareness of the Barbie brand among U.S. girls ages 5 – 10 is as high as 98% and 99% among their mothers.  Mattel has acquired a valuable reputation and goodwill among the public as a result of such association.

34.     In addition, in 1991 the U.S. Court of Appeals for the Second Circuit recognized that Barbie is the best-selling toy doll in the world,[11] and in 1998, now-Justice Sonia Sotomayor wrote that "by any measure – the world-known BARBIE is a 'famous' trademark under the Federal Anti-Dilution Act."[12]

35.     Mattel has gone to great lengths to protect its interests in the Barbie Products and Barbie Marks. No one other than Mattel and its authorized licensees and distributors are authorized to manufacture, import, export, advertise, offer for sale or sell any goods utilizing the Barbie Marks or Mattel Marks, or use the Barbie Marks or Mattel Marks in connection with goods or services or otherwise, without the express permission of Mattel.

### **Defendants' Wrongful and Infringing Conduct**

36.     Particularly in light of Plaintiff's success with its Barbie Products and Mattel Products, as well as the reputation it has gained, Plaintiff and its Barbie Products and Mattel Products have become targets for unscrupulous individuals and entities, who wish to capitalize on the goodwill, reputation and fame that Plaintiff has amassed in its Barbie Marks, Mattel Marks, Barbie Products and Mattel Products, and Plaintiff investigates and enforces against such activities.  Screenshots of Infringing Listings from Defendants' Merchant Storefronts and Defendants' Websites are included in

---

[11] *Miss America Organization v. Mattel, Inc.*, 945 F.2d 536, 537 (2d Cir. 1991).
[12] *Mattel, Inc. v. Jcom, Inc.*, 1998 U.S. Dist. LEXIS 16195, *9 (S.D.N.Y. Sep. 10, 1998).

**Exhibit C** attached hereto and incorporated herein by reference.

37.     Through Plaintiff's investigative and enforcement efforts along with consumer complaints, Plaintiff learned of Defendants' actions which vary and include, but are not limited to, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products bearing or used in connection with one or more of the Barbie Marks and Mattel Marks and/or in packaging and/or containing labels and/or hang tabs bearing the Barbie Marks and Mattel Marks and/or bearing or used in connection with marks that are confusingly similar to the Barbie Marks and/or Mattel Marks and/or that are identical or confusingly similar to the Barbie Products and Mattel Products to U.S. consumers, including those located in the State of New York, through Defendants' Websites and Defendants' Merchant Storefronts and/or using one or more of the Barbie Marks and Mattel Marks or marks that are confusingly similar thereto on Defendants' Websites and Defendants' Merchant Storefronts.

38.     Defendants created e-commerce Merchant Storefronts and Websites operating under several aliases.  Defendants' Merchant Storefronts and Defendants' Websites share unique identifiers establishing a logical relationship between them, and Defendants' counterfeiting operation arises out of the same transaction, occurrence, or transactions or occurrences.  Defendants further jointly solicit consumers through targeted advertising on Facebook, Instagram and other social media websites and platforms.

39.     Upon information and belief, Defendants attempt to avoid liability by operating under one or more alias and/or company names to conceal their identities as well as the full scope of their counterfeiting operation.

40.     Through Defendant's Websites and Defendants' Merchant Storefronts, which indicate prices in U.S. dollars and accept payment via PayPal or credit card, Defendants offer for sale and/or

sell consumer products, including Counterfeit Products, and target and ship the same to customers located in the U.S., including New York, and throughout the world.

41.    Defendants' Counterfeit Products listed on Defendants' Websites and Defendants' Merchant Storefronts are nearly identical to Plaintiff's Barbie Products and Mattel Products, only with minor variations that no ordinary consumer would recognize.

42.    For example, a side-by-side comparison of an example of an image of a Counterfeit Product received via a purchase from one of Defendants' Websites to an image of one of Plaintiff's Barbie Products from Plaintiff's Website is illustrated below:



| **Counterfeit Product Received from Defendants' Website** | **Image of Plaintiff's Authentic Barbie Product** |
|---|---|

*See also* **Exhibit C**.

43.    Plaintiff has been contacted by multiple consumers expressing confusion stemming from Defendants' Website and Merchant Storefronts, for example, one consumer had placed an order from one of Defendants' Websites but received the above Counterfeit Product instead of the authentic Barbie Product.

44.    Defendants are not, and have never been, authorized by Plaintiff or any of its

authorized agents, authorized licensees or authorized distributors to copy, manufacture, import, export, advertise, distribute, offer for sale or sell the Barbie Products, Mattel Products or to use the Barbie Marks and Mattel Marks, or any marks that are confusingly similar to the Barbie Marks or Mattel Marks.

45.     By their actions, as outlined herein, Defendants have violated Plaintiff's exclusive rights in the Barbie Marks, Mattel Marks, and has used marks that are confusingly similar to, identical to and/or constitute counterfeiting and/or infringement of the Barbie Marks and Mattel Marks in order to confuse consumers into believing that Defendants' Websites and Defendants' Merchant Storefronts are associated with Plaintiff and/or Defendants' Counterfeit Products are Plaintiff's Barbie Products and/or Mattel Products and aid in the promotion and sales of Defendants' Counterfeit Products.

46.     Defendants' conduct began long after Plaintiff's adoption and use of the Barbie Marks and Mattel Marks, after Plaintiff filed for and obtained federal registrations in the Barbie Marks and Mattel Marks, as alleged above, and after Plaintiff's Barbie Marks, Mattel Products, Barbie Products and Mattel Products became well-known to the purchasing public.

47.     Prior to and contemporaneous with their actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the Barbie Marks and Mattel Marks of the fame and incalculable goodwill associated therewith and of the popularity and success of the Barbie Products and Mattel Products and in bad faith adopted the Barbie Marks and Mattel Marks.

48.     Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff, the Barbie Marks, Mattel Marks, Barbie Products and Mattel Products.

49.     Defendants' actions, as alleged herein, have caused, and will continue to cause

confusion, mistake, economic loss, and have deceived, and will continue to deceive, consumers, the public and the trade with respect to the source or origin of Defendants' Websites, Defendants' Merchant Storefronts and Defendants' Counterfeit Products, thereby causing consumers to erroneously believe that Defendants' Websites, Defendants' Merchant Storefronts and/or Defendants' Counterfeit Products are licensed by or otherwise associated with Plaintiff, thereby damaging Plaintiff.

50.     By engaging in these actions, Defendants have, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiff: counterfeited and infringed the Barbie Marks and Mattel Marks, committed unfair competition and unfairly profited from such activities at Plaintiff's expense.

51.     Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (Trademark Counterfeiting)
**[15 U.S.C. § 1114(1)(b)/Lanham Act § 32; 15 U.S.C. § 1116(d)/Lanham Act § 34; 15 U.S.C. § 1117(b)-(c)/Lanham Act § 35]**

52.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

53.     Plaintiff is the exclusive owner of all right and title to the Barbie Marks and Mattel marks.

54.     Plaintiff has continuously used the Barbie Marks and Mattel Marks in interstate commerce since on or before the dates of first use as reflected in the Barbie Marks and Mattel Marks attached hereto as **Exhibit B**.

55.     Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in its Barbie Marks and Mattel Marks, Defendants intentionally reproduced, copied, and/or colorably imitated the Barbie Marks, Mattel Marks and/or used spurious designations that are identical with, or substantially indistinguishable from, the Barbie Marks and Mattel Marks, on or in

connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

56.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the Barbie Marks and Mattel Marks through its participation in such activities.

57.     Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the Barbie Marks and Mattel Marks to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which it is not entitled in law or equity.

58.     Defendants' unauthorized use of the Barbie Marks and Mattel Marks in connection with Defendants' Websites, Defendants' Merchant Storefronts and Defendants' Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff or its authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the Barbie Marks and Mattel Marks.

59.     Defendants' actions constitute willful counterfeiting of the Barbie Marks and Mattel Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

60.     As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiff, its business, its reputation and its valuable rights in and to the Barbie Marks and Mattel Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Barbie Marks and Mattel Marks.

61.     Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### (Infringement of Registered Trademarks)
### [15 U.S.C. § 1114/Lanham Act § 32(a)]

62.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

63.     Plaintiff has continuously used the Barbie Marks and Mattel Marks in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit B.**

64.     Plaintiff, as the owner of all right, title and interest in and to the Barbie Marks and Mattel Marks, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

65.     Defendants were, at the time they engaged in their actions as alleged herein, actually

aware that Plaintiff is the owner of the federal trademark registrations for the Barbie Marks and Mattel Marks.

66.     Defendants did not seek and thus inherently failed to obtain consent or authorization from Plaintiff, as the registered trademark owner of the Barbie Marks and Mattel Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell the Barbie Products, Mattel Products and/or related products bearing the Barbie Marks and Mattel Marks into the stream of commerce.

67.     Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of the Barbie Marks and Mattel Marks and/or which are identical or confusingly similar to the Barbie Marks and Mattel Marks.

68.     Defendants' egregious and intentional use of the Barbie Marks and Mattel Marks or marks that are identical or confusingly similar thereto, in commerce on or in connection with Defendants' Websites, Defendants' Merchant Storefronts and/or Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the same, and is likely to deceive the public into believing that Defendants' Websites, Defendants' Merchant Storefronts and/or Defendants' Counterfeit Products are associated with or authorized by Plaintiff.

69.     Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the Barbie Marks and Mattel Marks, as well as with bad faith and the intent to cause confusion, mistake, and deception.

70.     Defendants' continued, knowing, and intentional use of the Barbie Marks and Mattel

Marks without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered Barbie Marks and Mattel Marks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

71.     As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Barbie Marks and Mattel Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and the valuable Barbie Marks and Mattel Marks.

72.     Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION
### (False Designation of Origin, Passing Off & Unfair Competition)
### [15 U.S.C. § 1125(a)/Lanham Act § 43(a)]

73.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

74.     Plaintiff, as the owner of all right, title and interest in and to the Barbie Marks and Mattel Marks, has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

75.     The Barbie Marks and Mattel Marks are inherently distinctive and/or have acquired

distinctiveness.

76.     Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly similar to, and constitute reproductions of the Barbie Marks and Mattel Marks and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Counterfeit Products are Barbie Products, Mattel Products or related products, and/or that Defendants' Counterfeit Products are authorized, sponsored, approved, endorsed or licensed by Plaintiff and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Counterfeit Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the Barbie Marks and Mattel Marks, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

77.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiff's Barbie Products and Mattel Products using marks that are identical and/or confusingly similar to, or which constitute colorable imitations of the Barbie Marks and Mattel Marks, Defendants have traded off the extensive goodwill of Plaintiff and its Barbie Products and Mattel Products and did in fact induce, and intend to, and will continue to induce customers to purchase Defendants' Counterfeit Products, thereby directly and unfairly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff and

its Barbie Marks and Mattel Marks, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

78.     Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks that are identical or confusingly similar to and constitute reproductions of the Barbie Marks and Mattel Marks would cause confusion, mistake or deception among purchasers, users and the public.

79.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation Plaintiff, its Barbie Products, Mattel Products and Barbie Marks and Mattel Marks.

80.     As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its Barbie Products and Mattel Products and by depriving Plaintiff of the value of its Barbie Marks and Mattel Marks as commercial assets in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of the Barbie Marks and Mattel Marks.

81.     Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of

them, as follows:

A. For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a) and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B. In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the Court considers just, which Plaintiff may elect prior to the rendering of final judgment;

C. For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for willful trademark infringement of Plaintiff's federally registered Barbie Marks and Mattel Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D. For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition 15 U.S.C. § 1125(a);

E. For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives,

directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

i. manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

ii. directly or indirectly infringing in any manner Plaintiff's Barbie Marks and Mattel Marks;

iii. using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Barbie Marks and Mattel Marks to identify any goods or services not authorized by Plaintiff;

iv. using Plaintiff's Barbie Marks and Mattel Marks or any other marks that are confusingly similar to the Barbie Marks and Mattel Marks, on or in connection with Defendants' manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale, sale and/or otherwise dealing in the Counterfeit Products;

v. using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff; and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed,

promoted, distributed, displayed, offered for sale or sold by Defendants, websites owned or operated by Defendants, services provided by Defendants, and/or Defendants' commercial activities by Plaintiff;

vi.   engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein;

vii.   engaging in any other actions that constitute unfair competition with Plaintiff;

viii.   engaging in any other act in derogation of Plaintiff's rights;

ix.   from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; and/or (ii) any computer files, data, business records, documents or any other records or evidence relating to Defendants' Websites, Defendants' Merchant Storefronts, Defendants' Assets, and/or the manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

x.   from secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying any of Defendants' Assets from or to Defendants' Financial Accounts until further ordered by this Court;

xi.   effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any final judgment or order in this action;

xii.   operating Defendants' Websites and Defendants' Merchant Storefronts; and

xiii.   knowingly instructing any other person or entity to engage or perform any of the activities referred to in subparagraphs (i) through (xii) above; and

F.  For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe Plaintiff's Barbie Marks and Mattel Marks, or bear any marks that are confusingly similar to the Barbie Marks and Mattel Marks;

G.  For an order of the Court requiring that Defendants deliver up for destruction to Plaintiff any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe Plaintiff's Barbie Marks and Mattel Marks, or bear any marks that are confusingly similar to the Barbie Marks and Mattel Marks pursuant to 15 U.S.C. § 1118;

H.  For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants and/or their manufacturing, importation, exportation, advertising, marketing, promotion, distribution, displaying, offering for sale, sale and/or otherwise dealing in the Counterfeit Products as described herein, including prejudgment interest;

I.  For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiff;

J.  For an award of exemplary or punitive damages in an amount to be determined by the Court;

K.  For Plaintiff's reasonable attorneys' fees;

L.  For all costs of suit; and

M.  For such other and further relief as the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury on all claims.


Dated: November 17, 2022                    Respectfully submitted,

                                            **EPSTEIN DRANGEL LLP**

                                BY:         _____
                                            Gabriela N. Nastasi
                                            gnastasi@ipcounselors.com
                                            Jason M. Drangel (JD 7204)
                                            jdrangel@ipcounselors.com
                                            Ashly E. Sands (AS 7715)
                                            asands@ipcounselors.com
                                            Danielle S. Futterman (DY 4228)
                                            dfutterman@ipcounselors.com
                                            60 East 42nd Street, Suite 1250
                                            New York, NY 10165
                                            Telephone: (212) 292-5390
                                            Facsimile: (212) 292-5391
                                            *Attorneys for Plaintiff*
                                            *Mattel, Inc.*